IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| COMMUNITY BANK, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 19-512 |
| | ) | | |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, | ) ) ) | | |
| | ) | | |
| Defendant. | ) | | |

## COMPLAINT

Plaintiff Community Bank, by its attorneys, Metz Lewis Brodman Must O'Keefe LLC, files this Complaint.

## PARTIES

1. Plaintiff Community Bank is a Pennsylvania corporation with a principal place of business at 2111 North Franklin Drive, Suite 200, Washington, Pennsylvania 15301.

2. Defendant Fidelity National Title Insurance Company ("Fidelity") is a Florida corporation with a principal place of business at 601 Riverside Avenue, Jacksonville, Florida 32204.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00, and the parties are completely diverse: Community Bank is incorporated in and has its principal place of business in Pennsylvania, and Fidelity is incorporated in and has its principal place of business in Florida.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this District, and the property that is the subject of the title policy at issue in this matter is situated in this District.

**BACKGROUND FACTS**

5.      This matter arises out of the October 2007 purchase of a roughly 29.6-acre parcel of property located in Allegheny County, Pennsylvania (the "Property") by Blackwood Pointe Associates, LLC ("Blackwood").

6.      Blackwood purchased the Property from RCH Jefferson, L.P. pursuant to the terms of a Deed dated October 23, 2007 and recorded with the Office of the Recorder of Deeds of Allegheny County on October 24, 2007 in Deed Book Volume 13416, Page 569 (the "Deed"). A true and correct copy of the Deed is attached hereto as Exhibit "A."

7.      The Deed identified the property which Blackwood was obtaining "as the 'Subdivided Area' in the Blackwood Acres Plan No. 1, recorded in the Recorder of Deeds Office of Allegheny County, Pennsylvania on _____, 2007, in Plan Book Volume _____, page _____," followed by a more particular metes and bounds description.

8.      The Deed further stated that the Property was "formerly designated as part of Block and Lot No. 769-C-100," and contemplated that the Property would be designated as a new Block and Lot number in connection with the Blackwood Acres Plan No. 1 subdivision plan.

9.      Blackwood Acres Plan No. 1 was a subdivision plan by which the Property would be subdivided and developed into a multi-unit housing development containing a total of 110 units (comprised of four single-family units and 106 townhouse units).

10.     In September 2006, at Blackwood's request, the Council of the Borough of Jefferson Hills had granted final approval of Blackwood Acres Plan No. 1.

11. To secure a $2.1 million term loan from Community Bank to purchase the Property, Blackwood executed and delivered to Community Bank a Mortgage dated October 23, 2007 and recorded with the Office of the Recorder of Deeds of Allegheny County on October 24, 2007 in Mortgage Book Volume 34618, Page 43 (the "Mortgage").  A true and correct copy of the Mortgage is attached hereto as Exhibit "B."

12. Like the Deed, the Mortgage identified the property which was subject to Community Bank's Mortgage by reference to the Blackwood Acres Plan No. 1: "ALL that certain Lot or piece of ground situate in the Borough of Jefferson Hills, of Allegheny County, Pennsylvania, being Parcel C in the Blackwood Acres Plan No. 1, recorded in the Recorder of Dee[d]s Office of Allegheny County, Pennsylvania, on _____, 2007, in Plan Book Volume _____, Page _____, and being more particularly bounded and described as follows," followed by the same metes and bounds description as set forth in the Deed.

13. In connection with its loan to Blackwood, Community Bank purchased a $2.1 million title insurance policy from Fidelity (the "Policy").  A true and correct copy of the Policy is attached hereto as Exhibit "C."

14. The Policy insured "against loss or damage . . . sustained or incurred by [Community Bank] by reason of[, *inter alia*,] . . . [u]nmarketability of the title[ and] [l]ack of a right of access to and from the land[.] . . ."

15. Like the Deed and the Mortgage, Schedule C to the Policy identified the Property "as the 'Subdivided Area' in the Blackwood Acres Plan No. 1, recorded in the Recorder of Deeds Office of Allegheny County, Pennsylvania on _____, 2007, in Plan Book Volume _____ page _____, and being more particularly bounded and described as follows," followed the same metes and bounds description as set forth in the Deed and the Mortgage.

16. By October 2008, Blackwood was in default of its obligations to Community Bank under the Mortgage.

17. In November 2008, Community Bank instituted a mortgage foreclosure action against Blackwood in Pennsylvania state court.

18. Also, in November 2008, Community Bank advised the Borough of Jefferson Hills that it intended to move forward with Blackwood Acres Plan No. 1, which had been conditionally reapproved by the Borough several times since it was originally approved in September 2006.

19. In December 2008, the Borough of Jefferson Hills denied Community Bank's request for an extension of time of final approval of the Blackwood Acres Plan No. 1.

20. In October 2009, Community Bank obtained title to the Property via a Sheriff's Deed dated October 13, 2009 and recorded with the Office of the Recorder of Deeds of Allegheny County on October 22, 2009 in Deed Book Volume 14078, Page 152 (the "Sheriff's Deed").  A true and correct copy of the Sheriff's Deed is attached hereto as Exhibit "D."

21. The Sheriff's Deed identified the Property conveyed to Community Bank "as the 'Subdivided Area' in the Blackwood Acres Plan No. 1, recorded in the Office of the Recorder of Deeds of Allegheny County, Pennsylvania, on October 24, 2007, at Instrument Number: 2007-34065," followed by the same metes and bounds description as set forth in the Deed, the Mortgage, and the Policy.

22. Community Bank thereafter learned that the Property remained a part of a single parcel identified as Tax Parcel Block and Lot No. 769-C-100, which lot included acreage owned by third parties other than Blackwood and Community Bank.

23. The Property was thus rendered inaccessible and unmarketable, as Community Bank lacked a right of access to or from, and could not sell, the Property because part of it was owned by third parties.

24. In an effort to cure these accessibility and marketability issues, Community Bank sought to obtain reapproval from the Borough of Jefferson Hills of the Blackwood Acres Plan No. 1 so that such Plan could be recorded and the Property could be subdivided and developed in accordance with that Plan.

25. The Borough of Jefferson Hills, however, rejected Community Bank's attempts to obtain reapproval of the Blackwood Acres Plan No. 1.

26. Ultimately, in August 2016, the Borough of Jefferson Hills approved an alternative plan for the Property, identified as the Community Bank – JHB Plan No. 1 (the "<u>Community Bank Plan</u>").

27. The Community Bank Plan is a single developable lot, reducing the salable lots from 110 lots, as set forth in the Blackwood Acres Plan No. 1, to a single lot.

28. Community Bank's inability to access, develop, and market the Property pursuant to the Blackwood Acres Plan No. 1 has significantly reduced the Property's value.

29. In April 2008, in conjunction with the October 2007 loan to Blackwood, Community Bank obtained an appraisal of the Property, which determined the highest and best use of the Property to be a multi-unit development and valued the Property at between $2.85 million (as completed as of August 2008) and $1.7 million (as is as of April 2008).

30. In August 2010, after Community Bank had obtained title to the Property but before the approval of the Community Bank Plan, Community Bank obtained an appraisal of the Property, which valued the Property at $400,000.00.

31. Also, in October 2016, Community Bank obtained an appraisal of the Property, which valued the Property at between $295,000.00 (market value) and $235,000.00 (liquidation).

32. On October 12, 2016, Community Bank, through its counsel, submitted a claim under the Policy to Fidelity, seeking reimbursement for actual monetary damages sustained or incurred by reason of the unmarketability and inaccessibility of the Property from and after recordation of the Sheriff's Deed in October 2009 until approval and recordation of the Community Bank Plan in August 2016, as well as the diminution in value of the Property due to such defects.

33. By letter dated August 2, 2017, Fidelity denied Community Bank's claim.

34. Community Bank has, in the intervening months, provided additional information and documentation to Fidelity in connection with Community Bank's claim under the Policy.

35. Fidelity, however, continues to stand by its denial of Community Bank's claim.

## COUNT I—DECLARATORY JUDGMENT

36. The averments of paragraphs 1 through 35 above are incorporated by reference.

37. Community Bank seeks a declaration pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, that it is entitled to coverage under the Policy and that it is entitled to reimbursement for actual monetary damages sustained or incurred by reason of the unmarketability and inaccessibility of the Property from and after recordation of the Sheriff's Deed in October 2009 until approval and recordation of the Community Bank Plan in August 2016, as well as the diminution in vale of the Property due to such defects.

WHEREFORE, Plaintiff Community Bank respectfully requests that a declaratory judgment be entered in its favor and against Defendant Fidelity National Title Insurance Company as set forth in the immediately preceding paragraph.

**COUNT II—BREACH OF CONTRACT**

38. The averments of paragraphs 1 through 37 above are incorporated by reference.

39. The Policy is an enforceable contract of insurance between Community Bank, as insured, and Fidelity, as insurer.

40. Under the Policy, Fidelity has a contractual duty to, among other things, insure "against loss or damage . . . sustained or incurred by [Community Bank] by reason of[, *inter alia*,] . . . [u]nmarketability of the title[ and] [l]ack of a right of access to and from the land[.]"

41. Based on the terms and conditions of the Policy and the contemporaneous documents related to Blackwood's acquisition of the Property, particularly the fact that the property description in the Policy, the Deed, and the Mortgage all made specific reference that the property subject to the Deed, the Mortgage, and the Policy was the "Subdivided Area" as identified in the Blackwood Acres Plan No. 1, Community Bank reasonably believed that the Policy provided coverage in the event that its title to the Property was rendered unmarketable and/or it lacked a right of access to and from the Property because title to the Property was other than as defined as the "Subdivided Area."

42. Community Bank has sustained actual monetary loss or damage by reason of the unmarketability of title to the Property and its lack of a right of access to and from the Property in the form of the costs and expenses incurred in correcting the defect in title, in addition to the diminution in value of the Property.

43. By declining coverage under the Policy, Fidelity has materially breached the terms of the Policy.

44. As a direct and proximate result of Fidelity's material breach of the Policy, Community Bank has suffered and will continue to suffer significant damages in the form of the

costs and expenses incurred in correcting the defect in title, in addition to the diminution in value of the Property.

WHEREFORE, Plaintiff Community Bank respectfully requests that a declaratory judgment be entered in its favor and against Defendant Fidelity National Title Insurance Company in an amount in excess of $75,000.00.

Respectfully submitted,

METZ LEWIS BRODMAN MUST O'KEEFE LLC

Date: May 3, 2019   By: */s/ Justin T. Barron*
John R. O'Keefe, Jr.
PA I.D. No. 36633
Justin T. Barron
PA I.D. No. 200394
535 Smithfield Street, Suite 800
Pittsburgh, PA 15222
(412) 918-1100